UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**FILED - GR**
April 6, 2026 2:49 PM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY:JMW  SCANNED BY: ___ / 4-6

UNITED STATES OF AMERICA,

      Plaintiff,

    vs.

STACY DEAN JONES, JR.,

      Defendant.

_____/

**1:26-cr-27**

**Jane M. Beckering**
**U.S. District Judge**

**FELONY INFORMATION**

The United States Attorney charges:

**(Wire Fraud)**

From a date no later than on or about May 15, 2019, and continuing through on or about May 23, 2023, in Ottawa County, in the Southern Division of the Western District of Michigan, and elsewhere,

**STACY DEAN JONES, JR.,**

having devised a scheme and artifice to defraud, and to obtain money by means of false and fraudulent pretenses and representations, caused signs, sounds, and signals to be transmitted by wire in interstate commerce for the purpose of executing the scheme.

BACKGROUND

At all times relevant to this information:

1.    STACY DEAN JONES, JR. was the proprietor of Diesel Core Resources ("DCR"), also known as Auto Parts Direct, an auto parts dealer in

Holland, Michigan. Among other things, DCR bought and sold parts for diesel engines manufactured by Ford Motor Company ("Ford").

2.      Ford was an American multinational automobile manufacturer headquartered in Dearborn, Michigan. Ford also manufactured replacement parts for its vehicles, including engine parts, under its "Ford" and "Motorcraft" brands.

3.      A "diesel core injector" is analogous to a fuel injector in a gasoline-powered engine. It is a valuable part that can be rebuilt, re-sold, and returned to service.

4.      In order to maintain quality control over its branded used parts, Ford offered a return policy meant to encourage owners to return them to the company instead of selling them on the secondary market. Under the policy, the price of a replacement injector included a deposit, which the company refunded if the used part was returned to Ford in accordance with the company's guidelines.

5.      When a customer purchased a new or rebuilt diesel core injector, the part came packaged in a special box, which had codes and identifying labels affixed to track inventory and deter counterfeiting. The boxes were specially designed to fit the part inside and protect it from damage during shipping. The codes and labels were attached to the box because they could not practically be attached to irregularly shaped, lubricated metal parts.

6.      In order to obtain a refund of the purchase deposit, the customer put the old diesel core injector in the same box the new part came in, and returned it to an authorized Ford dealer. To be eligible for the refund, the box had to contain a

Ford diesel core injector of the same model as the replacement part. The authorized dealer would then send the box to Ford, where its return would be logged. If the injector was in good condition, Ford would remanufacture it for sale as a certified used part. Ford would then destroy the box so it could not be re-used.

THE SCHEME TO DEFRAUD

7.     During the time frame alleged above, Ford used contractors to dispose of the returned diesel core injector boxes. One or more individuals with access to those boxes diverted them from the destruction process, and sold them illicitly to contacts in the auto parts business. At the time, Ford lacked sufficient controls to detect when a used box was being returned more than once. As a result the boxes could be returned more than once, causing Ford to pay out a deposit refund to which the returning party was not entitled.

8.     The defendant purchased diverted, empty diesel core injector boxes from associates in Texas and South Carolina for prices as low as $20 or $30 apiece. He also advertised on the internet to buy empty diesel core injector boxes, which he planned to resell. This permitted the return of the box to Ford for a refund of between $150 and $180, even if the box had previously been returned.

9.     For the purpose of executing the scheme and artifice, the defendant communicated from Ottawa County with his source in South Carolina, and with buyers outside the State of Michigan. Those communications included internet advertising; telephone and text negotiations, and the interstate transfer of purchase money. On or about September 21, 2020, the defendant made a $3,180.00 electronic

payment from Holland, Michigan to F.W. in Columbia, South Carolina for the purchase of 159 diverted Ford diesel core injector boxes.

10.    On or about June 2, 2022, the defendant advertised on DCR's internet website that he would purchase Ford diesel core injector boxes from any willing seller at $10 apiece.

11.    On or about February 1, 2023, the defendant sold 8 diverted Ford diesel core injector boxes, with diesel cores inside, to undercover agents of Homeland Security Investigations for $100 apiece.

12.    On or about April 12, 2023, the defendant sold 24 diverted Ford diesel core injector boxes for $100 apiece.

13.    On or about May 23, 2023, the defendant possessed approximately 3,327 diverted Ford diesel core injector boxes at his facility in Holland, Michigan.

**18 U.S.C. § 1343**

## FORFEITURE ALLEGATION

The allegations contained in this Felony Information are hereby re-alleged and incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c). Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), upon conviction of the offense in violation of 18 U.S.C. § 1343 this Felony Information, the defendant,

### STACY DEAN JONES, JR.,

shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to the violation. The property to be forfeited includes, but is not limited to, the following:

1. MONEY JUDGMENT: A sum of money that represents the proceeds obtained, directly or indirectly, from the offense charged in the felony information.

2. SUBSTITUTE ASSETS: If any of the property described above, as a result of any act or omission of the defendant:

  a. cannot be located upon the exercise of due diligence;

  b. has been transferred or sold to, or deposited with, a third party;

  c. has been placed beyond the jurisdiction of the court;

  d. has been substantially diminished in value; or

  e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

5

18 U.S.C. § 981(a)(1)(C)
28 U.S.C. § 2461(c)
21 U.S.C. § 853(p)
18 U.S.C. § 1343

TIMOTHY VERHEY
United States Attorney

Date: April 6, 2026

NILS R. KESSLER
Assistant United States Attorney

6